UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| MICAH ERNEST TUCKER, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 1:22-cv-00001 <br><br> Judge William L. Campbell, Jr. <br> Magistrate Judge Alistair E. Newbern |

To:     The Honorable William L. Campbell, District Judge

### REPORT AND RECOMMENDATION

Plaintiff Micah Ernest Tucker filed this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Acting Commissioner of the Social Security Administration (SSA) denying his applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and for supplemental security income (SSI) under Title XVI of the Social Security Act, *id.* §§ 1381–1383f. (Doc. No. 1.) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 8.) Tucker has filed a motion for judgment on the administrative record (Doc. No. 20), to which the Acting Commissioner has responded in opposition (Doc. No. 23), and Tucker has filed a reply (Doc. No. 24). Having considered the parties' arguments and the administrative record (Doc. No. 15) as a whole, the Magistrate Judge will recommend that the Court grant Tucker's motion for judgment on the record, vacate the Acting Commissioner's decision, and remand for further administrative proceedings consistent with this Report and Recommendation.

I.  **Background**

   A.  **Tucker's DIB and SSI Applications**

Tucker applied for DIB and SSI on May 15, 2019, alleging that he has been disabled and unable to work since February 10, 2019, as a result of back problems, neck issues, shoulder issues, knee problems, anxiety, and high blood pressure. (AR 67–68, 79–80.[1]) The Commissioner denied Tucker's applications initially and on reconsideration. (AR 91, 92, 119, 120.) At Tucker's request, an administrative law judge (ALJ) held a telephonic hearing regarding his applications on November 12, 2020. (AR 40–66, 138–39.) Tucker appeared without an attorney or non-attorney representative and testified. (AR 42–61.) The ALJ also heard testimony from a vocational expert. (AR 62–66.)

   B.  **The ALJ's Findings**

On December 7, 2020, the ALJ issued a written decision finding that Tucker was not disabled within the meaning of the Social Security Act and applicable regulations and denying his claims for DIB and SSI. (AR 24–35.) The ALJ made the following enumerated findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.
>
> 2. The claimant has not engaged in substantial gainful activity since February 10, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe combination of impairments: degenerative disc disease; peripheral neuropathy and left upper extremity disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> \*   \*   \*
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

---

[1]  The transcript of the administrative record (Doc. No. 15) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant is able to lift and carry twenty pounds occasionally and ten pounds frequently; he is able to sit, stand and walk six hours total each; he is able to frequently balance and he is able to occasionally perform all other postural activities.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant was born on March 28, 1969 and was 49 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has an eleventh-grade education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 10, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 26–35.) The Social Security Appeals Council denied Tucker's request for review on November 1, 2021, making the ALJ's decision the final decision of the Acting Commissioner.[2] (AR 1–7.)

### C. Appeal Under 42 U.S.C. § 405(g)

Tucker filed this action for review on January 4, 2022 (Doc. No. 1), and this Court has jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3). Tucker argues that the ALJ violated SSA regulations by insufficiently explaining her reasons for discounting Dr. Woodrow Wilson, M.D.'s medical opinion regarding Tucker's functional limitations. (Doc. No. 20-1.) The Acting Commissioner responds that the ALJ complied with SSA regulations and that her determinations are supported by substantial record evidence. (Doc. No. 23.) Tucker's reply reiterates his arguments that the ALJ's analysis of Dr. Wilson's opinion is inadequate and warrants reversal. (Doc. No. 24.)

### D. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to address the parties' arguments.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir.

---

[2] The Acting Commissioner was appointed to replace the former Commissioner on July 9, 2021. *See Soc. Sec. Admin.—Legality of Serv. of Acting Comm'r*, B-333543, 2022 WL 326059, at *2 (Comp. Gen. Feb. 1, 2022).

2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

**B.     Determining Disability at the Administrative Level**

DIB and SSI benefits are available to individuals who are disabled, which is defined in this context as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (explaining that this definition applies in the DIB and SSI contexts).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). For purposes of this case, the regulations governing disability determination for DIB and SSI benefits are identical. *See Colvin*, 475 F.3d at 730 (citing 20 C.F.R.

§§ 404.1520, 416.920). At step one, the ALJ considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "[I]f the claimant is performing substantial gainful activity, then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller*, 811 F.3d at 834 n.6. If not, the ALJ proceeds to step four. *Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:16-1231, 2017 WL 6492621, at *3 (M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted*, 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite [his] limitations.'" *Combs*, 459 F.3d at 643 (first alteration in original) (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and

the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). If the claimant's residual functional capacity (RFC) permits him to perform past relevant work, he is not disabled. *Combs*, 459 F.3d at 643. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of [his] residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**III.     Analysis**

Tucker's sole argument in support of reversal is that the ALJ improperly discounted Dr. Wilson's medical opinion regarding Tucker's functional limitations in formulating Tucker's RFC. (Doc. No. 20-1.) For DIB and SSI claims filed on or after March 27, 2017, new SSA regulations provide that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from [the claimant's] medical sources."[3] 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead,

---

3     This is a departure from the regulations governing claims filed before March 27, 2017, which "[g]enerally . . . g[a]ve more weight to the medical opinion of a source who ha[d] examined [the claimant] than to the medical opinion of a medical source who ha[d] not examined [the claimant]." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Those regulations specifically required an ALJ to give controlling weight to a medical opinion from the claimant's treating physician if the opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with other substantial evidence in [the] case record[.]" *Id.* §§ 404.1527(c)(2), 416.927(c)(2).

the ALJ must "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors including, but not limited to, evidence showing that the medical source is familiar with other evidence in the record or has an understanding of the SSA's policies and evidentiary requirements. *Id.* §§ 404.1520c(a), (c)(1)–(5), 416.920c(a), (c)(1)–(5). The regulations specifically require ALJs to "articulate in [their] determination[s] or decision[s] how persuasive [they] find all of the medical opinions" in a claimant's record. *Id.* §§ 404.1520c(b), 416.920c(b).

Supportability and consistency are "[t]he most important factors" in this analysis. *Id.* §§ 404.1520c(a), 416.920c(a). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). In assessing consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). The SSA has promised claimants that it "will explain how [it] considered the supportability and consistency factors . . . in [its] determination or decision" and "may, but [is] not required to, explain how [it] considered the [remaining] factors . . . ."[4] *Id.* §§ 404.1520c(b)(2),

---

[4] This differs from the regulations governing SSI claims filed before March 27, 2017, which promised claimants that the SSA would "always give good reasons in [its] notice of determination or decision for the weight [it] g[a]ve [the] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

416.920c(b)(2). "A reviewing court 'evaluates whether the ALJ properly considers the factors as set forth in the regulations to determine the persuasiveness of a medical opinion.'" *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

Dr. Wilson is a physician in Murfreesboro, Tennessee, who examined Tucker on February 19, 2020, in connection with Tucker's DIB and SSI applications. (AR 365–68.) Dr. Wilson noted the following physical examination findings:

> PHYSICAL EXAMINATION:
> Vital Signs: Height is 69 inches without shoes. weight of 239 lbs, blood pressure is 140/80, pulse of 71, and respirations 18. Visual acuity without correction 20/20 right eye, 20/20 left eye, and 20/20 with both eyes.
>
> General: He is an overweight, alert white male, in no obvious distress. Seems of average intelligence, functioning okay. He did use his arms to push himself up out of the chair. He is cooperative with the examination and seems reliable, pleasant gentleman.
>
> Head, Ears, Eyes, Nose, and Throat: Pupils are equal round, and reactive to light. Conjunctivae are clear. Extraocular motions are intact. Ear canals and nares are clear. Oropharynx is unremarkable. He is edentulous in the upper jaw. He has many missing teeth on the lower jaw. Speech and hearing seemed to be okay.
>
> Neck: Has no adenopathy or masses. No bruits or JVD. He has full flexion of the neck, but extension is 20 degrees, lateral deviation in each direction to 30 degrees. Normal rotation in each direction.
>
> Respiratory System: Thorax has equal bilateral excursion. Breath sounds are clear bilaterally.
>
> Cardiovascular System: Heart has regular sinus rhythm with normal S1 and S2. No murmurs or gallop. He has good peripheral pulses. No bruits heard.
>
> Abdomen: Obese, soft, nontender, and nondistended. No guarding or rebound. No organomegaly. Bowel sounds are positive. No bruits heard.
>
> Musculoskeletal System: His gait is normal with good cadence. He can tandem walk six steps without much difficulty. He can go up on his toes, back on his heels, balance weight on each foot independently. Romberg's was negative. Shoulders

> have forward extension to 135 degrees bilaterally. Abduction to 130 degrees on the right, and 135 degrees on the left. Full internal rotation and external r[ot]ation 30 degrees bilaterally. Elbows, wrists, and hands have full range of motion. Hips, he flexes to 90 degrees bilaterally. Has full internal and external rotation of the hips. Knees and ankles have full range of motion. There is no joint effusion. No calf tenderness. No swelling or pitting edema.
>
> Thoracolumbar Exam: He has flexion to[ ] only 70 degrees, extension to 10 degrees, and lateral deviation in each direction to 20 degrees. He does complain of pain in his back on motion. Straight leg raise was negative bilaterally.
>
> Neurological Exam: Cranial nerves II through XII seemed to be intact grossly. Motor strength was 5/5. Sensation to light touch was intact generally. Cerebellar functioning was some ataxic bilaterally. No tremor demonstrated. Deep tendon reflexes were 2+ and equal bilaterally.

(AR 367–68.) Dr. Wilson further stated that Tucker had "some old records for review" which showed that Tucker "had diagnoses of degenerative disc disease, degenerative joint disease, osteoarthritis, . . . [and] muscle spasms," among other conditions. (AR 368.) Dr. Wilson ordered x-rays of Tucker's lumbosacral spine and right knee, but results of those x-rays were still "pending" when Dr. Wilson signed his medical statement. (*Id.*)

Dr. Wilson diagnosed Tucker with "[c]hronic neck and back pain," stating that the pain was "probably on the basis of degenerative disc disease, but it has not been evaluated recently." (*Id.*) He also diagnosed Tucker with "[b]ilateral knee pain," stating that the pain was "probably on the basis of osteoarthritis, but it has not been evaluated." (*Id.*) Dr. Wilson opined that Tucker "could sit for four to six hours in an eight-hour day. Standing and walking two to four hours each. He thinks he can lift 30–40 lbs occasionally. He is able to take care of his own activities of daily living." (*Id.*) The x-ray of Tucker's lumbosacral spine later showed "[n]o fracture or abrupt malalignment" but did show "[m]ild degenerative changes . . . present predominantly at L5–S1 where there is disc space height loss with scattered facet joint hypertrophy as well through the spine." (AR 369.) The x-ray of Tucker's right knee showed "no fracture or other significant bony

abnormality[,]" "[n]o joint effusion . . . [,] and no [evident] radiopaque foreign body . . . ."

(AR 370.)

> In formulating Tucker's RFC, the ALJ addressed Dr. Wilson's opinion as follows:
>
> By request of the Social Security Administration, the claimant presented to an all systems consultative examination on February 19, 2020, performed by Woodrow Wilson, M.D. Upon presentation, he was alert, oriented and appeared to be in no acute distress. He used both arms to push himself up from a chair. His gait was normal with good cadence. He tandem walked six steps without much difficulty. He balanced weight on each foot independently. Romberg's was negative[.] Forward extension of the shoulders was 135 degrees bilaterally. Abduction to 130 degrees on the right and 135 degrees on the left. Full internal rotation and external rotation was 30 degrees bilaterally. He exhibited full ranges of motion of both elbows, wrists hands, knees and ankles. Flexion of the hips was 90 degrees bilaterally. He demonstrated full internal and external rotation of the hips. [ ] No joint effusions, calf tenderness, swelling or pitting edema was present. No adenopathy or masses involving the neck was identified. He exhibited 20 degrees extension but displayed full flexion and normal rotation of the neck in each direction. Cranial nerves II through XII were grossly intact. Motor strength was 5/5 bilaterally. Sensation to light touch was intact. Cerebellar functioning was somewhat ataxic, but no tremors were identified. Deep tendon reflexes were 2+ and equal bilaterally. X-rays of the claimant's lumbar spine taken during examination only showed mild degenerative changes at the L5–S1 level. X-rays of the claimant's right knee taken that same day did not show any significant bony abnormalities. No joint effusions or radiopaque foreign body was evident. Dr. Wilson's diagnosis was chronic neck and back pain; bilateral knee pain; history of hypertension; history of urinary calculi; obesity (Exhibit 3F).
>
> Dr. Wilson opined the claimant was able to lift in the range of 30–40 pounds occasionally; stand and walk two to four hours each; sit four to six hours in an eight-hour workday. He concluded the claimant was capable of attending to daily activities.
>
> Dr. Wilson is a one-time examining source who has not been involved in treatment of the claimant. In terms of the lifting, carrying, standing, walking, and sitting restrictions, this conclusion is unpersuasive since these findings are inconsistent with the claimant's relatively good physical functioning demonstrated during the actual examination and by the opinions provided by the State agency medical consultants as seen above (Exhibits 1A; 2A; 5A; 6A).

(AR 32.)

Tucker argues that "this boiler plate analysis" does not satisfy the ALJ's obligation to articulate how persuasive the ALJ found Dr. Wilson's opinion under 20 C.F.R. §§ 404.1520c(b)

and 416.920c(b) because it does not "'provide a coherent explanation of [her] reasoning.'" (Doc. No. 20-1, PageID# 514 (quoting *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021)).) Tucker further identifies specific medical findings in the administrative record that he argues support Dr. Wilson's opinion. (Doc. No. 20-1.) The Acting Commissioner responds that the ALJ properly analyzed Dr. Wilson's opinion under the applicable regulations and that the ALJ considered the evidence Tucker identifies elsewhere in her decision. (Doc. No. 23.) The Acting Commissioner further argues that other evidence in the record supports the ALJ's evaluation of Dr. Wilson's opinion. (*Id.*) In his reply, Tucker reiterates his arguments that the ALJ "failed to properly articulate how she considered the [consistency and supportability] factors" in evaluating Dr. Wilson's opinion. (Doc. No. 24, PageID# 537.)

While the new SSA "regulations plainly are less demanding than the former rules governing the evaluation of medical source opinions, especially those of treating sources[,] . . . 'they still require that the ALJ provide a coherent explanation of [her] reasoning.'" *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021) (third alteration in original) (quoting *Lester v. Saul*, No. 20-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021)). The SSA has explained that the new regulations set forth the "minimum level of articulation" ALJs must "provide in [their] determinations and decisions to provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5858 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416), *technical errors corrected by* 82 Fed. Reg. 15132-01 (Mar. 27, 2017); *see also Hardy*, 554 F. Supp. 3d at 906 (same). "An 'ALJ's failure . . . to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [claimant's] disability

determination was supported by substantial evidence.'" *Hardy*, 554 F. Supp. 3d at 906 (alterations in original) (quoting *Vaughn v. Comm'r of Soc. Sec.*, No. 20-cv-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021)). It also "ignores the mandate of the regulations that guarantees claimants a certain level of process that cannot be discounted by the substantial evidence test alone." *Id.* at 908 (citing *Blakley*, 581 F.3d at 410).

The ALJ's two-sentence analysis of Dr. Wilson's medical opinion does not satisfy this standard. The ALJ stated that Dr. Wilson's opined "lifting, carrying, standing, walking, and sitting restrictions" were "inconsistent with [Tucker's] relatively good physical functioning demonstrated during the actual examination . . . ." (AR 32.) But the ALJ did not articulate what particular examination findings she considered to be inconsistent with Dr. Wilson's assessment of Tucker's limitations or whether or how she considered the examination findings that did support Dr. Wilson's assessment, even omitting some of the supporting findings from her summary of Dr. Wilson's examination.

For example, Dr. Wilson found that Tucker's cervical spine extension was "20 degrees" with "lateral deviation in each direction to 30 degrees"; that his thoracolumbar spine "ha[d] flexion to[ ] only 70 degrees, extension to 10 degrees, and lateral deviation in each direction to 20 degrees"; and that Tucker "complain[ed] of pain in his back on motion."[5] (AR 367, 368.) The ALJ's summary of Dr. Wilson's examination findings omitted the findings regarding Tucker's thoracolumbar spine flexion, extension, and lateral deviation; back pain; and cervical spine lateral deviation. (AR 32.) The ALJ also did not articulate how she considered any of these supportive findings in determining that Dr. Wilson's opined limitations were "inconsistent with [Tucker's]

---

[5] For context, it is "common" to have fifty-five degrees of cervical spine extension, ninety degrees of thoracolumbar spine flexion, and thirty degrees of thoracolumbar spine extension. 1 Dan J. Tennenhouse, *Attorneys Medical Deskbook* § 12:3 (4th ed. updated Oct. 2022).

relatively good physical functioning demonstrated during the actual examination . . . ." (*Id.*) Further, the ALJ discounted Dr. Wilson's opinion for being "a one-time examining source who ha[d] not been involved in [Tucker's] treatment" while elevating differing "opinions provided by the State agency medical consultants . . . ." (*Id.*) Those consultants, however, never examined Tucker.

Where, as here, "relevant evidence is not mentioned, the Court cannot discern whether the ALJ discounted or overlooked the evidence." *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588, 2021 WL 858662, at *20 (N.D. Ohio. Mar. 8, 2021). This court has found that, "even though '[t]he ALJ is not required to address every piece of evidence or testimony presented, . . . [s]he must provide a "logical bridge" between the evidence and [her] conclusions.'" *Collier v. Comm'r of Soc. Sec. Admin.*, No. 3:16-cv-02077, 2018 WL 2193965, at *2 (M.D. Tenn. May 14, 2018) (first and second alterations in original) (quoting *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)). The ALJ did "'not build an accurate and logical bridge'" to show the reasoning leading from the evidence of Dr. Wilson's examination and opined limitations to her conclusion that Dr. Wilson's opinion is inconsistent with other record evidence; accordingly, the Court "cannot uphold" the ALJ's decision, even if there is sufficient evidence elsewhere in the record to support it. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio Mar. 1, 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)); *see also Hardy*, 554 F. Supp. 3d at 906 (finding that an ALJ must "provide a coherent explanation of [her] reasoning . . . in order to "'provide sufficient rationale for a reviewing adjudicator or court'" (first alteration in original) (quoting *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021))).

Because the ALJ has not sufficiently articulated her reasoning, the Court cannot evaluate her decision with the level of process guaranteed to claimants by the SSA. *Hardy*, 554 F. Supp. 3d at 908. Remand is required.

**IV.     Recommendation**

For these reasons, the Magistrate Judge RECOMMENDS that Tucker's motion for judgment on the record (Doc. No. 20) be GRANTED, that the Acting Commissioner's decision be VACATED, and that this matter REMANDED to the SSA for further administrative proceedings consistent with this Report and Recommendation.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 18th day of January, 2023.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge